UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

Brian F. Carlisle
Angelique Carlisle

Debtor(s).

CHAPTER 7 CASE
CASE NO. 18-32498

NOTICE OF HEARING AND MOTION FOR
RELIEF FROM STAY CH 7

TO:   Debtors and other entities specified in Local Rule 9013-3(a).

1.      Deutsche Bank National Trust Company, as Trustee for BCAP Trust LLC
2007-AA1 Mortgage Pass-Through Certificates Series 2007-AA1, (hereinafter "Movant"), by
Nationstar Mortgage LLC d/b/a Mr. Cooper its servicing agent, by its undersigned attorney
moves the Court for the relief requested below and gives notice of hearing herewith.

2.      The Court will hold a hearing on this motion on Wednesday October 24, 2018, at
1:30 pm, or as soon thereafter as counsel can be heard, before the Honorable Judge Katherine A
Constantine in Courtroom 2C of the above entitled Court located at 316 Robert St N, Saint Paul
MN, 55101-1241.

3.      Any response to this motion must be filed and served not later than Friday
October 19, 2018, which is five days before the time set for the hearing (including Saturdays,
Sundays and holidays).   UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY
FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and
1334, Federal Rule of Bankruptcy Procedure 5005 and Local Rule 1070-1.   This proceeding is a
core proceeding.   The petition commencing this case was filed on August 07, 2018.   The case is
now pending in this Court.

5.      This motion arises under 11 U.S.C. § 362 and Federal Rule of Bankruptcy

Procedure 4001.   This motion is filed under Federal Rule of Bankruptcy Procedure 9014 and

Local Rules 9013-1 - 9019-1.   Movant requests relief from the automatic stay with respect to

property subject to a lien.   Movant requests said relief be effective immediately notwithstanding

Federal Rule of Bankruptcy Procedure 4001(a)(3).

6.      Debtors are indebted to Movant in the original principal amount of $1,400,000.00,

as evidenced by that certain Promissory Note dated January 04, 2007, a copy of which is

attached hereto as Exhibit "A", together with interest thereon.

7.      Debtors' indebtedness is secured by a mortgage on real estate in which Debtor has

an interest as evidenced by that certain mortgage deed dated January 04, 2007, executed by Brian

F Carlisle and Angelique Carlisle, husband and wife as joint tenants, filed for record in the office

of the County Recorder on February 09, 2007, as Document Number A764325, Scott County,

State of Minnesota, a copy of which is attached hereto as Exhibit "B".   The name and address of

the original creditor is contained in the attached Exhibit "B".   Said mortgage was assigned to

Deutsche Bank National Trust Company, as Trustee for BCAP Trust LLC 2007-AA1 Mortgage

Pass-Through Certificates Series 2007-AA1 an Assignment of Mortgage dated September 25,

2018 and recorded on October 1, 2018 as Document Number A1054847.   A copy of the

aforesaid Assignment is attached hereto as Exhibit "C".   The property is located in Scott

County, Minnesota and is legally described as follows to wit:

> Lot 2, Block 3, Century Hills, according to the plat thereof on file and of record in the
> Office of the County Recorder, Scott County, Minnesota
> and commonly known as 6860 Century Ln Prior Lake, MN 55372

Movant is now the holder of said mortgage and is entitled to enforce the terms thereof.

8.      At all times material, Debtor was in default of the payments and performance of

obligations to Movant.

9.      Pursuant to 11 U.S.C. § 362(g) the burden is on Debtors to prove absence of cause and/or adequate protection.   This Movant's interest in the property is not adequately protected where, as of September 20, 2018, Debtors are delinquent for monthly payments as required for the months of August 01, 2018 to September 01, 2018 in the amount of $6,995.23 per month; and attorney's fees and costs.   Debtors have failed to make any offer of adequate protection. The Local 4001-1 Form is attached hereto as Exhibit "D".

10.     Debtors have no equity in the property and the property is not necessary to an effective reorganization.   The current tax-assessed value is $1,203,900.00 subject to Movant's mortgage in excess of $1,089,574.33.   The property is also subject to a Junior Federal Tax Lien in favor of INTERNAL REVENUE SERVICE in excess of $519,000.00.   The property is also subject to a Junior Mortgage in favor of PNC Bank in excess of $179,000.00.   A copy of Debtors' Schedule D and the 2018 Tax Statement are attached here to as Exhibit "E" and Exhibit "F" respectively.

11.     Movant desires to protect its interest in the aforementioned property and requests the Court to vacate the stay of actions and allow foreclosure pursuant to Minnesota law.

12.     Movant has incurred and will incur legal fees and costs to protect and enforce its rights in the subject property.

13.     Nationstar Mortgage LLC d/b/a Mr. Cooper services the loan on the property referenced in this proof of claim. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Deutsche Bank National Trust Company, as Trustee for BCAP Trust LLC 2007-AA1 Mortgage Pass-Through Certificates

Series 2007-AA1, "Noteholder".   Noteholder directly or through an agent, has possession of the

promissory note. The promissory note is either made payable to Noteholder or has been duly

endorsed. Noteholder is the original mortgagee, or beneficiary, or the assignee of the security

instrument for the referenced loan.

WHEREFORE, Movant, by its undersigned attorney, moves the Court for an order for

judgment that the automatic stay provided by 11 U.S.C. § 362(a) be terminated so to permit the

Movant to commence mortgage foreclosure proceedings under Minnesota law and for such other

relief as may be just and equitable.

Dated: October 3, 2018

**WILFORD, GESKE & COOK P.A.**

_____/e/ Orin J. Kipp_____
Orin J. Kipp, #0390438
Attorneys for Movant
7616 Currell Blvd; Ste 200
Woodbury, MN 55125-2296
(651) 209-3300

Prepared by: CLAY WHITE

LOAN #: 156134603

# FIXED/ADJUSTABLE RATE NOTE
### (LIBOR Twelve Month Index - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| JANUARY 04, 2007 | BLOOMINGTON | MINNESOTA |
|---|---|---|
| [Date] | [City] | [State] |

6860 CENTURY LANE, PRIOR LAKE, MN 55372
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 1,400,000.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
Countrywide Bank, N.A.
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       7.750  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**
   **(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the  first          day of each month beginning on
FEBRUARY 01, 2007   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JANUARY 01, 2037        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.
   **(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 10,029.77        . This amount may change.
   **(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the  first          day of
JANUARY, 2012    , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

CONV
● ARM Fixed Period LIBOR Note
2D661-XX (02/06)(d)                        Page 1 of 4                        Initials: 


* 2 3 9 9 1 *

* 1 5 6 1 3 4 6 0 3 0 0 0 0 0 2 D 6 6 1 *

LOAN #: 156134603

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for twelve month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each change date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER                    percentage points (    2.250   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    12.750  % or less than   2.750  %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   12.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN              calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

LOAN #: 156134603

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

LOAN #: 156134603

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
BRIAN F. CARLISLE                                -Borrower

_____ (Seal)
ANGELIQUE CARLISLE                               -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF:                    PAY TO THE ORDER OF:
COUNTRYWIDE HOME LOANS, INC.

WITHOUT RECOURSE                        WITHOUT RECOURSE
COUNTRYWIDE BANK, N.A.                  COUNTRYWIDE HOME LOANS, INC.

BY: _____           BY: _____
LAURIE MEDER, SVP                       MICHELE SJOLANDER, EVP

**Doc. No. A 764325**

OFFICE OF THE COUNTY RECORDER
SCOTT COUNTY, MINNESOTA

Certified Filed and/or Recorded on

02-09-2007 at 11:00 Receipt:611764

Pat Boeckman, County Recorder            01

Fee: $ 46.00

Registration tax of $ _3270.00_ paid
Treasurer's Receipt No. _611764_
Conservation Fee Paid  TW

*Cindy Geis*   County Auditor

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

MIN ▮▮▮▮▮▮▮

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

[Doc ID #]

Return To:
First USA Title, LLC
4535 Hodgson Road, Suite #100
Shoreview, MN 55126
File# ▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  JANUARY 04, 2007        , together with all Riders to this document.
**(B) "Borrower" is**
BRIAN F CARLISLE, AND ANGELIQUE CARLISLE, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is
Countrywide Bank, N.A.
Lender is a NATL. ASSN.
organized and existing under the laws of THE UNITED STATES        .
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314        .

**MINNESOTA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

Page 1 of 11

VMP -6A(MN) (0005).01  CHL (08/05)(d)   VMP Mortgage Solutions, Inc. (800)521 7291            Form 3024 1/01
CONV/VA

# EXHIBIT B

DOC ID #:████████

**(E) "Note"** means the promissory note signed by Borrower and dated JANUARY 04, 2007 . The Note states that Borrower owes Lender
ONE MILLION FOUR HUNDRED THOUSAND and 00/100

Dollars (U.S. $ 1,400,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 01, 2037 .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

| COUNTY | of | SCOTT | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

Lot 2, Block 3, Century Hills, according to the plat thereof on file and of record in the Office of the County Recorder, Scott County, Minnesota

DOC ID #: ▆▆▆▆▆▆▆▆

Parcel ID Number: 040840060                                   which currently has the address of

6860 CENTURY LANE, PRIOR LAKE                      ,
[Street/City]

Minnesota      55372      ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: ▮▮▮▮▮▮▮▮

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

DOC ID #: ■■■■■■■■■■

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to

DOC ID #: ▮▮▮▮▮▮▮▮▮▮

Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

DOC ID #: ▮▮▮▮▮▮▮▮▮▮

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

DOC ID #: ▮▮▮▮▮▮▮▮▮▮▮▮

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

DOC ID #: ▬▬▬▬▬▬▬

**17. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

DOC ID #:

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**25. Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

DOC ID #: ▮▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BRIAN F. CARLISLE                -Borrower

_____ (Seal)
ANGELIQUE CARLISLE              -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

**STATE OF MINNESOTA,**            Hennepin      **County ss:**

On this ___4th___ day of ___January 2007___ , before me appeared,

Brian F. Carlisle and Angelique Carlisle, husband and wife

to me personally known to be the person(s) described in and who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free act and deed.

DAVID BRUCE MARKS
Notary Public-Minnesota
My Commission Expires Jan 31, 2010

Notary Public
My Commission Expires: 1-3 1-/0

This instrument was drafted by: CLAY WHITE
AMERICA'S WHOLESALE LENDER
1907 E WAYZATA BLVD #200, WAYZATA, MN 55391

Tax statements for the real property described in this instrument should be sent to:
BRIAN F. CARLISLE
6860 CENTURY LANE, PRIOR LAKE, MN 55372

-6A(MN) (0005).01   CHL (08/05)        Page 11 of 11        Form 3024 1/01

———————————————————— [Space Above This Line For Recording Data] ————————————————

# FIXED/ADJUSTABLE RATE RIDER
## (LIBOR Twelve Month Index - Rate Caps)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
CLAY WHITE
AMERICA'S WHOLESALE LENDER


1907 E WAYZATA BLVD #200
WAYZATA
MN 55391



[Doc ID #]


THIS FIXED/ADJUSTABLE RATE RIDER is made this FOURTH                day of
JANUARY, 2007     , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
Countrywide Bank, N.A.

("Lender") of the same date and covering the property described in the Security Instrument and located at:
6860 CENTURY LANE
PRIOR LAKE, MN 55372
[Property Address]

CONV
● ARM Fixed Period LIBOR Rider
2U652-XX (08/06)(d/i)                        Page 1 of 4                        Initials: _____



DOC ID #: █████████████

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of    7.750 %. The Note also provides for change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first         day of JANUARY, 2012    , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for twelve month U.S. dollar-denominated deposits in the London market, as published in the *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each change date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER         percentage points (    2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 12.750 % or less than    2.750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.750 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

DOC ID #: ██████████████

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand by Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

DOC ID #: ████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
BRIAN F. CARLISLE                                        - Borrower

_____ (Seal)
ANGELIQUE CARLISLE                                       - Borrower

_____ (Seal)
                                                        - Borrower

_____ (Seal)
                                                        - Borrower

CONV
● ARM Fixed Period LIBOR Rider
2U652-XX (08/06)                    Page 4 of 4                    Initials:

Receipt # 603393
AM5                $46.00

Return to:
ERECORDING PARTNERS
NETWORK
400 2ND AVE S

MINNEAPOLIS MN 55401

Certified Filed and/or recorded on:
10/1/2018 2:41 PM
**Office of the County Recorder
Scott County, Minnesota**
*Julie K. Hanson, County Recorder*

A1054847

EXHIBIT C

## CORPORATE ASSIGNMENT OF MORTGAGE

Scott, Minnesota
**SELLER'S SERVICING /** ███ "CARLISLE"

**MIN #:** ███ **SIS #: 1-888-679-6377**

Date of Assignment: September 25th  2018
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE
BANK, N.A., ITS SUCCESSORS AND ASSIGNS at  P.O. BOX 2026, FLINT, MI  48501-2026
Assignee: DEUTSCHE BANK NATIONAL TRUST COMPANY , AS TRUSTEE FOR BCAP TRUST LLC 2007-AA1
MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-AA1 at 1761 E. ST. ANDREW PALCE, SANTA ANA,
CA  92705-4934

Executed By: BRIAN F CARLISLE  AND ANGELIQUE  CARLISLE, HUSBAND AND WIFE AS JOINT TENANTS  To:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, N.A.
Date of Mortgage: 01/04/2007 Recorded:  02/09/2007  as Instrument No.: A 764325  In the County of Scott, State of
Minnesota.

Property Address: 6860 CENTURY LANE, PRIOR LAKE, MN  55372

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $1,400,000.00 with interest, secured thereby, and the full benefit of all
the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and
conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, N.A.,
ITS SUCCESSORS AND ASSIGNS
On September 25th, 2018

By _____
TSEDALE ALEMU, Vice-President

STATE OF Texas
COUNTY OF Dallas

On September 25th, 2018, before me, DANIELA HORVATH, a Notary Public in and for Dallas in the State of Texas,
personally appeared TSEDALE ALEMU, Vice-President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR COUNTRYWIDE BANK, N.A., ITS SUCCESSORS AND ASSIGNS, P.O. BOX 2026,
FLINT, MI  48501-2026, personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
DANIELA HORVATH
Notary Expires: 01/27/2020 #128862890

DANIELA HORVATH
Notary Public, State of Texas
Comm. Expires 01-27-2020
Notary ID 128862890

(This area for notarial seal)

Prepared By:  Bernardo Hernandez,  NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD,
COPPELL, TX 75019 1-888-480-2432
When Recorded Return To:  DOCUMENT ADMINISTRATION  NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD, COPPELL, TX  75019

Loan History. Begin loan history from the date of the first default related to the current default amount that is claimed in the motion

| Date | Amount Rec'd From Debtor(s) | Monthly Amount Due Principal/Interest | Monthly Amount Due Escrow | Amount Due Late Fees | Amount Due Other Charge* | Description of Other Charge |
|---|---|---|---|---|---|---|
| | | | | | | |
| 8/1/2018 | | $6,955.23 | | | | |
| 9/1/2018 | | $6,955.23 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| TOTALS | $0.00 | $13,910.46 | $0.00 | $0.00 | $0.00 | |
| | (a) | (b) | ( c ) | (d) | (e) | |

\* Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.)

**NOTE: Columns (b) + (c)+ (d)+(e) -(a) must equal the current amount that is claimed in the motion**


Attorneys fees  and filing fee for the motion, if allowed under note and/or mortgage and          $1,031.00

Current Default Amount Claimed in the Motion                                         $13,910.46

Escrow Balance (amount held for payment of taxes, insurance, etc)                              $0.00

Suspense Account Balance (amount of unapplied payments)                                  $0.00

# SCHEDULE D

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **BRIAN F CARLISLE** |
| | First Name     Middle Name     Last Name |
| Debtor 2 | **ANGELIQUE CARLISLE** |
| (Spouse if, filing) | First Name     Middle Name     Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MINNESOTA |
| Case number | 18-32498 |
| (if known) | |

☐ Check if this is an
amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.  If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| | | Amount of claim | Value of collateral | Unsecured |
| | | Do not deduct the | that supports this | portion |
| | | value of collateral. | claim | If any |

| 2.1 | **Frandsen Bank** | Describe the property that secures the claim: | **$6,000.00** | **$90,000.00** | **$0.00** |

Creditor's Name

**Third mortgage on homestead: Lot 1**

**P O Box 459**
**Lakeville, MN 55044**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
  community debt

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____    Last 4 digits of account number _____

| 2.2 | **INTERNAL REVENUE SERVICE** | Describe the property that secures the claim: | $519,000.00 | $90,000.00 | $435,000.00 |

Creditor's Name

**CENTRALIZED**
**INSOLVENCY**
**P O BOX 7346**
**Philadelphia, PA 19101**

Number, Street, City, State & Zip Code

**Tax lien on homestead: Lots 1 and 2**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
  community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
■ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred    **2007**    Last 4 digits of account number _____

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

# EXHIBIT E

| Debtor 1 | **BRIAN F CARLISLE** | | | Case number (if know) | **18-32498** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | **ANGELIQUE CARLISLE** | | | | |
| | First Name | Middle Name | Last Name | | |

---

| 2.3 | **Mr. Cooper** | Describe the property that secures the claim: | $1,079,000.00 | $1,300,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**First mortgage on homestead: Lot 2**

**P O Box 650783
Dallas, TX 75265**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____   Last 4 digits of account number _____

---

| 2.4 | **PNC Bank** | Describe the property that secures the claim: | $179,000.00 | $1,300,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**Second mortgage on homestead: Lot 2**

**P O Box 1397
Pittsburgh, PA 15230**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____   Last 4 digits of account number _____

---

| Add the dollar value of your entries in Column A on this page. Write that number here: | $1,783,000.00 |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $1,783,000.00 |

**Part 2:**  **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com       Best Case Bankruptcy

# Scott

**SCOTT COUNTY**
200 4th Avenue W
Shakopee, MN 55379
(952) 496-8115
E-mail: propertytax@co.scott.mn.us
www.scottcountymn.gov

Bill #: 731185
Property ID#: 040840060
Owner Name: CARLISLE BRIAN F & ANGELIQUE

Taxpayer:

18023*72**G50**1.062**2/2*********AUTO5-DIGIT 55328
BRIAN F & ANGELIQUE CARLISLE
6860 CENTURY LN
PRIOR LAKE MN  55372-5105

## Property Tax Statement 2018

### Values for Taxes Payable in 2018

**VALUES AND CLASSIFICATION**

| Taxes Payable Year: | 2017 | 2018 |
|---|---|---|
| Estimated Market Value: | 1,103,100 | 1,203,900 |
| Homestead Exclusion: | 0 | 0 |
| Taxable Market Value: | 1,103,100 | 1,203,900 |
| New Improvements: | 0 | 0 |
| Expired Exclusions: | 0 | 0 |
| Property Classification: | Res Non-Hstd | Res Non-Hstd |

**Step 1** — Sent in March 2017

**Step 2 — PROPOSED TAX NOTICE**
Did not include special assessments   $13,940.00
Sent in November 2017

**Step 3 — PROPERTY TAX STATEMENT**
| First Half Taxes | Due 05/15/2018 | $7,840.00 |
| Second Half Taxes | Due 10/15/2018 | $7,840.00 |
| Total Taxes Due in 2018: | | $15,680.00 |

**Current Step**

## $$$  REFUNDS?

You may be eligible for one or even two refunds to reduce your property tax. Read the back of this statement to find out how to apply.

**Property Address:**
6860 CENTURY LN
PRIOR LAKE MN 55372

**Property Description:**
SubdivisionName CENTURY HILLS Lot 002
Block 003 SubdivisionCd 04084
Section 31 Township 114 Range 021

**Line 13 Special Assessment Detail:**
STREET IMPROVEMENT PROJECT  411.20
2017
HHW FEE  11.00

## EXHIBIT F

### Tax Detail for Property:

| Taxes Payable Year: | | 2017 | 2018 |
|---|---|---|---|
| 1. Use this amount on Form M1PR to see if you are eligible for a homestead credit refund. File by August 15. If this box is checked, you owe delinquent taxes and are not eligible. ☐ | | | $0.00 |
| 2. Use these amounts on Form M1PR to see if you are eligible for a special refund. | | $0.00 | |
| 3. Property taxes before credits | | $13,723.00 | $15,257.80 |
| 4. Credits that reduce your property taxes: | | | |
| A. Agricultural and Rural Land Credits | | $0.00 | $0.00 |
| B. Other Credits | | $0.00 | $0.00 |
| 5. Property taxes after credits | | $13,723.00 | $15,257.80 |
| 6. County: | | $4,501.54 | $4,844.49 |
| 7. City or Town: | TOWN OF CREDIT RIVER | $1,757.60 | $2,051.05 |
| 8. State General Tax | | $0.00 | $0.00 |
| 9. School District | ISD 0194 LAKEVILLE | | |
| A. Voter Approved Levies | | $4,763.71 | $5,227.98 |
| B. Other Local Levies | | $2,169.77 | $2,555.26 |
| 10. Special Taxing Districts | A. Met Council | $106.62 | $117.75 |
| | B. Mosquito Control | $56.27 | $62.21 |
| | C. Scott County CDA | $205.51 | $223.10 |
| | D. Scott County WMO | $161.98 | $175.96 |
| 11. Non-school voter approved referenda levies | | $0.00 | $0.00 |
| 12. Total property tax before special assessments | | $13,723.00 | $15,257.80 |
| 13. Special assessments | Principal: 287.00 Interest: 135.20 | $11.00 | $422.20 |
| | | **$13,734.00** | **$15,680.00** |
| 14. YOUR TOTAL PROPERTY TAX AND SPECIAL ASSESSMENTS | | | |

---

## PAYABLE 2018 2nd HALF PAYMENT STUB
**TO AVOID PENALTY PAY ON OR BEFORE 10/15/2018**
Property ID: 040840060

Bill #: 731185

Taxpayer: BRIAN F & ANGELIQUE CARLISLE
6860 CENTURY LN
PRIOR LAKE MN 55372

**SECOND 1/2 TAX AMOUNT DUE:   $7,840.00**

0408400600 2018 2 0000000784000 8

**MAKE CHECKS PAYABLE TO: SCOTT COUNTY**
If your address has changed please check this box and show the change on the back of this stub. ☐
Attn: Customer Service Dept.
200 4TH AVE W
SHAKOPEE MN 55379

Your cancelled check is proof of payment. Please write your Property ID# on your check. Postdated checks are not held. Only official U.S. Postmark determines payment mail date. No receipt sent unless requested and is void until check is honored.

DETACH HERE AND RETURN THIS STUB WITH YOUR SECOND HALF PAYMENT

---

## PAYABLE 2018 1st HALF PAYMENT STUB
**TO AVOID PENALTY PAY ON OR BEFORE 05/15/2018**
Property ID: 040840060

Bill #: 731185

Taxpayer: BRIAN F & ANGELIQUE CARLISLE
6860 CENTURY LN
PRIOR LAKE MN 55372

| FULL TAX AMOUNT: | $15,680.00 |
| FIRST 1/2 TAX AMOUNT DUE: | $7,840.00 |

0408400600 2018 1 0000000784000 0

**MAKE CHECKS PAYABLE TO: SCOTT COUNTY**
If your address has changed please check this box and show the change on the back of this stub. ☐
Attn: Customer Service Dept.
200 4TH AVE W
SHAKOPEE MN 55379

Your cancelled check is proof of payment. Please write your Property ID# on your check. Postdated checks are not held. Only official U.S. Postmark determines payment mail date. No receipt sent unless requested and is void until check is honored.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                      CHAPTER 7 CASE
                                            CASE NO. 18-32498
Brian F. Carlisle
Angelique Carlisle                          MEMORANDUM IN SUPPORT OF
                                            MOTION FOR RELIEF FROM STAY CH 7

                              Debtors.
_____

## ARGUMENT

I.   CAUSE EXISTS FOR THE GRANTING OF RELIEF FROM THE AUTOMATIC
     STAY PURSUANT TO 11 U.S.C. § 362(d)(1) WHERE THE INTEREST OF THIS
     MOVANT IS NOT ADEQUATELY PROTECTED.

          Pursuant to 11 U.S.C. § 362(g) the burden is on Debtors to prove absence of cause

and/or adequate protection.   Movant's interest in the property is not adequately protected where:

     1.   As of September 20, 2018, Debtor is delinquent for monthly payments as required

for the months of August 01, 2018 to September 01, 2018 in the amount of $6,995.23 per month;

and attorney's fees and costs.

     2.   Debtors have failed to make any offer of adequate protection.

     Furthermore, Debtors have failed to meet its contractual obligations to make payments

as they become due after the filing of the bankruptcy petition, which failure constitutes "cause"

entitling the Movant to relief from the automatic stay under 11 U.S.C. § 362(d)(1).   A continued

failure by Debtors to maintain regular payments to Movant is sufficient cause to entitle Movant

to relief from the automatic stay.   See *In re Taylor*, 151 B.R. 646 (E.D.N.Y., 1993) and *In re

Davis*, 64 B.R. 358 (Bkrtcy. S.D.N.Y., 1986).


II.  THE AUTOMATIC STAY SHOULD BE MODIFIED PURSUANT TO 11 U.S.C. §
     362(d)(2) WHERE (1) DEBTORS DO NOT HAVE ANY EQUITY IN THE
     PROPERTY, AND (2) THE PROPERTY IS NOT NECESSARY TO AN EFFECTIVE

REORGANIZATION.

The first requirement under § 362(d)(2) is met where the total of all the encumbrances against the property is in excess of the value of the property.    The current tax-assessed value is $1,203,900.00 subject to Movant's mortgage in excess of $1,089,574.33.    The property is also subject to a Junior Federal Tax Lien in favor of INTERNAL REVENUE SERVICE in excess of $519,000.00.    The property is also subject to a Junior Mortgage in favor of PNC Bank in excess of $179,000.00.    Where there exists no equity in the property that is the subject of a motion for relief from stay, it is incumbent upon a debtor to make a showing that the property is necessary to an effective reorganization in order to successfully defend against the motion.    *In re Embassy Enterprises of St. Cloud,* 125 B.R. 552, 554 (Bankr. D. Minn. 1991). It is axiomatic that any secured property as to which a debtor has filed a written statement of intention to surrender is not necessary to an effective reorganization.    Moreover, a Chapter 7 bankruptcy is a liquidating case. "[T]herefore, by definition, the property is not necessary for an effective reorganization, which satisfies § 362(d)(2)(B)." In re Martens, 331 B.R. 395, 398 (8th Cir.   BAP 2005).

## **CONCLUSION**

Movant is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause, and where its interest in the secured property is not adequately protected.    Movant is also entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) where Debtors have no equity in the property, and where the property is not necessary to an effective reorganization.

Movant respectfully requests an order of this Court modifying the automatic stay

consistent with the attached proposed Order.


Dated: October 3, 2018                          **WILFORD, GESKE & COOK P.A.**


                                                ___/e/ Orin J. Kipp_____
                                                Orin J. Kipp, #0390438
                                                Attorneys for Movant
                                                7616 Currell Blvd; Ste 200
                                                Woodbury, MN 55125-2296
                                                (651) 209-3300

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                    CHAPTER 7 CASE
                                          CASE NO. 18-32498
Brian F. Carlisle
Angelique Carlisle                        AFFIDAVIT OF NATIONSTAR
                                          MORTGAGE LLC D/B/A MR. COOPER

                        Debtors.

_____

_____Mary Gracia_____, being first duly sworn on oath, deposes and states:

       That I am a/an _Assistant Secretary_ of Nationstar Mortgage LLC d/b/a Mr.
Cooper.

       1.     That Deutsche Bank National Trust Company, as Trustee for BCAP Trust LLC
2007-AA1 Mortgage Pass-Through Certificates Series 2007-AA1, is now the holder of a
mortgage on real property in which the debtor has an interest.  The debtors' indebtedness is
evidenced by that certain mortgage deed dated January 04, 2007, executed by Brian F Carlisle
and Angelique Carlisle, husband and wife as joint tenants, recorded on February 09, 2007, as
Document No. A764325, covering real estate located in Scott County, Minnesota, legally
described as follows, to wit:

       Lot 2, Block 3, Century Hills, according to the plat thereof on file and of record in the
       Office of the County Recorder, Scott County, Minnesota
       and commonly known as 6860 Century Ln Prior Lake, MN 55372

       2.     That I have reviewed the account records relating to the debtor's mortgage loan,
account no. ending in 4583.

       3.     That as of September 20, 2018, the following amounts were owing on this
account:

                   Unpaid Principal Balance            $1,078,810.02
                   Interest through September 20, 2018 $9,733.31
                   Attorney Fees and Costs             $1,031.00
                   TOTAL:                              $1,089,574.33

       4.     That the mortgage loan is delinquent for monthly payments as required for the
months of August 01, 2018 to September 01, 2018 in the amount of $6,995.23 per month; and
attorney fees and costs. Attached to the motion is the completed Local Rule Form 4001-1.

       5.     The current tax-assessed value of the property and the Movant's estimated current
market value is $1,203,900.00, subject to the Movant's mortgage in excess of $1,089,574.33.
According to the Debtors' schedules, the property is also subject to a Tax Lien in favor of

INTERNAL REVENUE SERVICE in excess of $519,000.00 and a second Mortgage in favor of PNC Bank in excess of $179,000.00.

      6.     This affidavit is given in support of the motion of Deutsche Bank National Trust Company, as Trustee for BCAP Trust LLC 2007-AA1 Mortgage Pass-Through Certificates Series 2007-AA1 for relief from the automatic stay.

Nationstar Mortgage LLC d/b/a Mr. Cooper

By _Mary Gracia_____

Mary Gracia
Assistant Secretary of
Nationstar Mortgage LLC
d/b/a Mr. Cooper
Affiant

Subscribed and sworn to before me
this _2_ day of _October_____, 2018.

_Chastity Wilson_____
Notary Public

CHASTITY WILSON
Notary Public, State of Texas
Comm. Expires 05-21-2019
Notary ID 130235636

After Recording Return To:
Nationstar Mortgage LLC
ATTN: POA's
2617 College Park Drive
Scottsbluff, NE 69361

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that Deutsche Bank National Trust Company, a national banking association organized and existing under the laws of the United States, and having its usual place of business at 1761 East St. Andrew Place, Santa Ana, California, 92705, as Trustee (the "Trustee") pursuant to the Trust Agreements (the "Agreements") for the trusts listed on Exhibit A, hereby constitutes and appoints Nationstar Mortgage LLC, as Servicer under the Agreements, successor to Bank of America, National Association, as Servicer (the "Servicer"), by and through the Servicer's officers, the Trustee's true and lawful Attorney-in-Fact, in the Trustee's name, place and stead and for the Trustee's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Agreements solely for the purpose of performing such acts and executing such documents in the name of the Trustee necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is acting as Trustee for various certificateholders (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which Nationstar Mortgage LLC, as Servicer under the Agreements, successor to Bank of America, National Association is acting as the Servicer.

This Appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreements shall be construed to the contrary:

1. The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided that (i) said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and (ii) otherwise conforms to the provisions of the Agreements.

2. The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3. The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4. The completion of loan assumption agreements.

5. The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6.   The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7.   The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8.   The full enforcement of and preservation of the Trustee's interests in the Mortgage Notes, Mortgages or Deeds of Trust, and in the proceeds thereof, by way of, including but not limited to, foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or the termination, cancellation or rescission of any such foreclosure, the initiation, prosecution and completion of eviction actions or proceedings with respect to, or the termination, cancellation or rescission of any such eviction actions or proceedings, and the pursuit of title insurance, hazard insurance and claims in bankruptcy proceedings, including, without limitation, any and all of the following acts:

   a.   the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

   b.   the preparation and issuance of statements of breach or non-performance;

   c.   the preparation and filing of notices of default and/or notices of sale;

   d.   the cancellation/rescission of notices of default and/or notices of sale;

   e.   the taking of deed in lieu of foreclosure;

   f.   the filing, prosecution and defense of claims, and to appear on behalf of the Trustee, in bankruptcy cases affecting Mortgage Notes, Mortgages or Deeds of Trust;

   g.   the preparation and service of notices to quit and all other documents necessary to initiate, prosecute and complete eviction actions or proceedings;

   h.   the tendering, filing, prosecution and defense, as applicable, of hazard insurance and title insurance claims, including but not limited to appearing on behalf of the Trustee in quiet title actions; and

   i.   the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8.a. through 8.h. above.

9.   With respect to the sale of property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation, the execution of the following documentation:
   a.   listing agreements;
   b.   purchase and sale agreements;

2

       c.     grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;

       d.     escrow instructions; and

       e.     any and all documents necessary to effect the transfer of property.

10.     The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall be effective as of February 11th, 2014.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Solely to the extent that the Servicer has the power to delegate its rights or obligations under the Agreements, the Servicer also has the power to delegate the authority given to it by Deutsche Bank National Trust Company, as Trustee, under this Limited Power of Attorney, for purposes of performing its obligations and duties by executing such additional powers of attorney in favor of its attorneys-in-fact as are necessary for such purpose. The Servicer's attorneys-in-fact shall have no greater authority than that held by the Servicer.

Nothing contained herein shall: (i) limit in any manner any indemnification provided to the Trustee under the Agreements, (ii) limit in any manner the rights and protections afforded the Trustee under the Agreements, or (iii) be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Deutsche Bank National Trust Company except as specifically provided for herein. If the Servicer receives any notice of suit, litigation or proceeding in the name of Deutsche Bank National Trust Company, then the Servicer shall promptly forward a copy of same to the Trustee.

This limited power of attorney is not intended to extend the powers granted to the Servicer under the Agreements or to allow the Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreements.

The Servicer hereby agrees to indemnify and hold the Trustee and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by the Servicer, or its attorneys-in-fact, of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreements or the earlier resignation or removal of the Trustee under the Agreements.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

IN WITNESS WHEREOF, Deutsche Bank National Trust Company, as Trustee for the Agreements listed on Exhibit A has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this 11th day February, 2014.

Deutsche Bank National Trust Company,
as Trustee

By:_____
    Name: Cindy Lai
    Title: Assistant Vice President

Witness: Jenny Pilapil

_____

Witness: Tuan Quach

_____

Prepared by:

_____
Name: Amy McNulty
Title: Associate
Address:      Deutsche Bank National Trust Company
              1761 E. Saint Andrew Place
              Santa Ana, CA 92705

State of California}
County of Orange}

On February 11th, 2014, before me, Melissa D. Vincent, Notary Public, personally appeared Cindy Lai, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____

Notary signature

MELISSA D. VINCENT
Commission # 1985628
Notary Public - California
Orange County
My Comm. Expires Jul 20, 2016

4

**NATIONSTAR MORTGAGE LLC**
as Servicer

By:
Name: Jennifer Kinsey
Title: Assistant Secretary

Witness:
Name: Rory Jaramillo

Witness:
Name: Kerri Weinmaster

## ACKNOWLEDGEMENT

STATE OF **NEBRASKA**

COUNTY OF **SCOTTS BLUFF**

On Feb. 21st, 2014, before me a Notary Public in and for said State, personally appeared **Jennifer Kinsey**, known to me to be a **Assistant Secretary** of **Nationstar Mortgage LLC** that executed the within instrument, and also known to me to be the person who executed said instrument on behalf of such corporation and acknowledged to me that such limited liability company executed the within instrument.

   **IN WITNESS WHEREOF**, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

GENERAL NOTARY-State of Nebraska
**HELEN SCOTT**
My Comm. Exp. Oct. 25, 2016

Helen Scott
NOTARY PUBLIC
My Commission expires: October 25, 2016

Exhibit A

Trust Agreement dated February 1, 2007 by and between BCAP LLC, as Depositor, Wells Fargo Bank,
National Association, as Custodian, and Deutsche Bank National Trust Company, as Trustee for
BCAP LLC Trust 2007-AA1, Mortgage Pass-Through Certificates, Series 2007-AA1

Assignment and Recognition Agreement dated February 27, 2007 by and between Barclays Bank PLC
("Barclays"), Sutton Funding LLC (together with Barclays, the Assignors), BCAP LLC, as
Assignee, Countrywide Home Loans Servicing LP, as Servicer, Countrywide Home Loans, Inc.,
as Company and Deutsche Bank National Trust Company, as Trustee.

Trust Agreement dated March 1, 2007 by and between BCAP LLC, as Depositor, Wells Fargo Bank,
National Association, as Custodian, and Deutsche Bank National Trust Company, as Trustee for
BCAP LLC Trust 2007-AA2, Mortgage Pass-Through Certificates, Series 2007-AA2

Assignment and Recognition Agreement dated March 29, 2007 by and between Barclays Bank PLC
("Barclays"), Sutton Funding LLC (together with Barclays, the Assignors), BCAP LLC, as
Assignee, Countrywide Home Loans Servicing LP, as Servicer, Countrywide Home Loans, Inc.,
as Company and Deutsche Bank National Trust Company, as Trustee.

Trust Agreement dated May 1, 2007 by and between BCAP LLC, as Depositor, Wells Fargo Bank,
National Association, as Custodian, and Deutsche Bank National Trust Company, as Trustee for
BCAP LLC Trust 2007-AA3, Mortgage Pass-Through Certificates, Series 2007-AA3

Assignment and Recognition Agreement dated May 31, 2007 by and between Barclays Bank PLC as
Assignor, BCAP LLC, as Assignee, Countrywide Home Loans Servicing LP, as Servicer,
Countrywide Home Loans, Inc., as Company and Deutsche Bank National Trust Company, as
Trustee.

Trust Agreement dated June 1, 2007 by and between BCAP LLC, as Depositor, Wells Fargo Bank,
National Association, as Custodian, and Deutsche Bank National Trust Company, as Trustee for
BCAP LLC Trust 2007-AA4, Mortgage Pass-Through Certificates, Series 2007-AA4

Assignment and Recognition Agreement dated June 29, 2007 by and between Barclays Bank PLC as
Assignor, BCAP LLC, as Assignee, Countrywide Home Loans Servicing LP, as Servicer,
Countrywide Home Loans, Inc., as Company and Deutsche Bank National Trust Company, as
Trustee.

Assignment and Recognition Agreement dated June 29, 2007 by and between Sutton Funding LLC, as
Assignor, BCAP LLC, as Assignee, Countrywide Home Loans Servicing LP, as Servicer,
Countrywide Home Loans, Inc., as Company and Deutsche Bank National Trust Company, as
Trustee.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                          CHAPTER 7 CASE
                                                CASE NO. 18-32498
Brian F. Carlisle
Angelique Carlisle                              UNSWORN DECLARATION FOR PROOF
                           Debtors.             OF SERVICE

_____

     Dianne K. Benson, employed by Wilford, Geske & Cook P.A., attorneys licensed to
practice law in this Court, with office address at 7616 Currell Blvd; Ste 200, Woodbury, MN
55125-2296, declares that on October 3, 2018, I served the annexed Notice of Hearing and
Motion for Relief from Stay, Memorandum in Support of Motion for Relief from Stay, Affidavit
of Nationstar Mortgage LLC d/b/a Mr. Cooper, and proposed Order to each person referenced
below, a copy thereof by enclosing the same in an envelope with first class postage prepaid and
depositing same in the post office at Woodbury, Minnesota addressed to each of them as follows:

Brian F. Carlisle
Angelique Carlisle
6860 Century Ln
Prior Lake, MN 55372-5105

And by certified mail to:

PNC Bank
Attn: CEO William S. Demchak
P.O. Box 1397
Pittsburgh, PA 15230

Internal Revenue Service
Attn: Charles P. Rettig, Commissioner
Centralized Insolvency
P.O. Box 7346
Philadelphia, PA 19101

Internal Revenue Service
Attn: Chrles P. Rettig, Commissioner
1500 Pennsylvania Avenue NW
Washington, D.C. 20220

and delivered by e mail notification under CM/ECF on the day efiled with the Court to each of
them as follows:

Ian Ball

Patti J. Sullivan

U.S. Trustee

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: October 3, 2018

        /e/ Dianne K. Benson
        Dianne K. Benson

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                    CHAPTER 7 CASE
                                          CASE NO. 18-32498
Brian F. Carlisle
Angelique Carlisle                        PRE-DISCHARGE ORDER

                    Debtors.
_____

**ORDER GRANTING RELIEF FROM STAY**

      This case is before the court on the motion of Deutsche Bank National Trust Company, as Trustee for BCAP Trust LLC 2007-AA1 Mortgage Pass-Through Certificates Series 2007-AA1, for relief from the automatic stay imposed by 11 U.S.C. § 362(a).

      Based on the record, the court finds that grounds exist under 11 U.S.C. § 362(d) to warrant relief.

      IT IS ORDERED:

1. The motion for relief from stay is granted as follows.

2. he automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the movant may exercise its rights and remedies under applicable nonbankruptcy law with respect to the following property:

   Lot 2, Block 3, Century Hills, according to the plat thereof on file and of record in the Office of the County Recorder, Scott County, Minnesota
   and commonly known as 6860 Century Ln, Prior Lake, MN 55372-5105

3. Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is effective immediately.

Dated:

                                          _____
                                          United States Bankruptcy Judge